UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE WHITFIELD, LISA PORTER,
DANIEL LEWINSKI, MICHELLE LEWINSKI,
and ADAM HAKIM, individually and on behalf
of all others similarly situated,

        Plaintiffs,

v.

THE PEP BOYS – MANNY, MOE & JACK,
a Pennsylvania Corporation, MICHAEL ODELL,
an individual, RAY ARTHUR, an individual, TROY FEE,
an individual, and GLEN ROBISON, an individual,
individually and in their capacities as
directors, officers, and managers of
The Pep Boys – Manny, Moe & Jack, jointly and severally,

        Defendants.
_____/

Case No. 13-cv-11070

Sean F. Cox

United States District Court

## **OPINION & ORDER**

George Whitfield, Lisa Porter, Daniel Lewinski, Michelle Lewinski, and Adam Hakim (collectively "Plaintiffs") filed this action against The Pep Boys, Michael Odell, Ray Arthur, Troy Fee, and Glen Robison (collectively "Defendants"). The parties have stipulated to dismissal of all Counts except for Count X, an unjust enrichment claim asserted by Daniel Lewinski ("Lewinski"), and the derivative Count XIII, a claim for loss of consortium asserted by his wife, Michelle Lewinski. The matter is currently before the Court on Defendants' Motion for Summary Judgment.

The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion

1

will be decided upon the briefs. As explained below, the Court concludes that Defendants are entitled to summary judgment as to Counts X and XIII, the last remaining claims in this action.

## BACKGROUND

**Procedural History**

Plaintiffs initially asserted the following claims against Defendants: "Retaliatory Discharge Against Public Policy" (Count I); "Violation of Michigan's Consumer Protection Act, MCL 445.901 *et seq*." (Count II); "Violation of Michigan's Consumer Protection Act, MCL 445.901 *et seq*." (Count III); "Violation of the Bullard-Plawecki Employee Right to Know Act, MCL 423.501, *et seq*." (Count IV); "Fraudulent Misrepresentation" (Count V); "Innocent Misrepresentation" (Count VI); "Defamation" (Count VII); "Intentional Infliction of Emotional Distress as Related to Defamation" (Count VIII); "Quantum Meruit/Promissory Estopple" (Count IX); "Unjust Enrichment" (Count X); "Breach of Contract" (Count XI); "Intentional Infliction of Emotional Distress as Related to Notice of Restitution Due" (Count XII); and "Loss of Society Companionship and Consortium" (Count XIII).

Count X of the Complaint alleges that Defendants received a benefit through the efforts of Lewinski pursuant to his duties as an employee. (Docket Entry No. 17, "Sec. Am. Compl." at ¶ 99). Count X further alleges that Defendants held back certain sums of money owed to Lewinski. (Sec. Am. Compl. at ¶ 100). As a result, Defendants are alleged to have been unjustly enriched. (Sec. Am. Compl. at ¶ 104). Moreover, such enrichment is alleged not to be the product of a contract or otherwise agreed upon. (Sec. Am. Compl. at ¶ 103).

Count XIII of the Complaint alleges that Michelle Lewinski is the spouse of Daniel Lewinski. (Sec. Am. Compl. at ¶ 124). As such, Michelle Lewinski is alleged to have suffered a loss of society, companionship, consortium and services from injuries sustained by her spouse. (Sec. Am. Compl. at ¶ 126).

Following the close of discovery, Defendants filed a Motion for Summary Judgment as to each count asserted by Plaintiffs. (Docket Entry No. 44).

This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order of the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 16 at 3). Defendants complied with the Court's practice guidelines for motions for summary judgment as their motion includes a "Statement of Undisputed Material Facts." (Docket Entry No. 42 at Pg ID 815-35, "Defs.' Stmt."). Plaintiffs' response included a separate "Counter-Statement of Disputed Facts." (Docket Entry No. 50 at Pg ID 1282-92, "Pls.' Stmt.").

"Plaintiffs' Response Brief in Opposition to Defendants' Motion for Summary Judgment" stipulated to the dismissal of all counts asserted except for Count X, "Unjust Enrichment" as to Plaintiff Daniel Lewinski, and Count XIII, "Loss of Society Companionship and Consortium" as to Plaintiff Michelle Lewinski. (Docket Entry No. 51, "Pls.' Resp. Br.").

The following material facts pertaining to Counts X and XIII are evidenced by the documents submitted by the parties, taken in the light most favorable to Plaintiffs, the nonmoving party.

**Factual Background**

Plaintiff Daniel Lewinski ("Lewinski") is a former employee of the Sterling Heights, Michigan location of Pep Boys. (Defs.' Stmt. at ¶ 2; Pls.' Stmt. at ¶ 2). Lewinski was a master mechanic who began working for Defendants in May 2010. In November 2011, Lewinski voluntarily resigned his employment with Defendants to accept a position with Belle Tire. (Defs.' Stmt. at ¶ 5; Pls.' Stmt. at ¶ 5).

Lewinski had executed an At-Will Employment Agreement with Defendants. (Defs.' Stmt. at ¶ 3; Pls.' Stmt. at ¶ 3). The At-Will Employment Agreement provided that, "employment and compensation are at-will and therefore can be terminated with or without cause, at any time without prior notice. . . ." (Ex. 5 to Defs.' Stmt. at 2).

As a master mechanic, Lewinski was paid according to a Flat-Rate Compensation System. (Defs.' Stmt. at ¶ 66; Pls.' Stmt. at ¶ 66). The Flat-Rate Compensation System "provides a 'safety net' feature to ensure continuity of income during interim low productivity or benefit periods." (Ex. 19 to Defs.' Stmt. at 1). The Flat-Rate Compensation System agreement provides in pertinent part:

> Weekly gross earnings are based on the greater of: (1) gross variable benefit rate (VBR) earnings, or (2) gross flat rate earnings. To calculate your weekly gross variable benefit rate (VBR) earnings, multiply your weekly hours worked x your variable benefit rate (VBR). To calculate your weekly gross flat rate earnings, multiply the flat rate hours produced x your hourly flat rate. *You will be paid the greater of these two calculations.*

(Ex. 19 to Defs.' Stmt. at 1). (Emphasis added).

Whether Lewinski received his flat rate of $26.50 per hour depended on whether he was performing vehicle repair work and if so, how long the repair itself took.  (Lewinski Dep. at 52). For example, if Lewinski had to diagnose the drivability of a vehicle and that task had a flat rate set for one hour, Lewinski would receive $26.50 regardless of whether the task actually took the entire hour.  (Lewinski Dep. at 52).

When Lewinski was not performing vehicle repairs, he was still paid his base hourly rate of $13.00 per hour.  (Defs.' Stmt. at ¶ 68; Pls.' Stmt. at ¶ 68).

> Q. So if you just came in and sat there for eight hours and nobody came into the store and nobody came into the service area, you would get $13.00 an hour for sitting around waiting for work? That would be half your flat rate?
> A. Yes, but you were expected to do other things during that time.

(Lewinski Dep. at 53-54).

Lewinski asserts in his Response Brief that Defendants were unjustly enriched because he rendered services outside the scope of his employment for which he was not compensated.  (Pls.' Resp. Br. at 3).  Specifically, Lewinski contends that this involved writing and executing sales, writing repair jobs, completing estimates, speaking to customers, receiving approval for jobs, and interacting with customers.  Lewinski claims these duties are responsibilities of service advisors and not mechanics.  Lewinski testified in pertinent part:

> Q. All right.  So look at page 11 of the complaint.  Paragraph 88 says defendant operated a commission system for employees such as plaintiffs Whitfield, Daniel Lewinski, and Hakim.  So is the commission system that you're referring to as to you this flat rate compensation system?
> A. No – well, I also should have been paid on the repair orders that I was put in charge of writing and executing sales of basically because nobody else wanted to do it is what it was portrayed to me by, so at a point I was pretty much left to do everything on my own.  I had to write repair orders at times or take the repair order that another service advisor wasn't really

5

> interested in following up on, putting together estimates, going and speaking to the customer either on-site or calling them up to notify them of what was going on with their vehicle, what maintenance requirements they needed to address, basically making the sale, getting approval for the job, which was all paid to service advisors under commission. I had asked Mike Stephens and Glen Robison about why wasn't I getting a portion of this commission that was normally paid to service advisors. Mike's response was no, the company's not going to go for anything like that, but if you want to sell them, you know, nobody else was going to do it, and I was already at a shortage of work and a shortage of compensation for being there. *I was told by Glen Robison that I shouldn't be doing that in the first place and asked why I was doing it.*

(Lewinski Dep. at 86-87). (Emphasis added).

Plaintiff Michelle Lewinski is married to Daniel Lewinski and has asserted a derivative claim for loss of society, companionship and consortium (Count XIII). (Defs.' Stmt. at ¶ 7; Pls.' Stmt. at ¶ 7). Thus, her claim is dependent upon the validity of Lewinski's claim of unjust enrichment. If the unjust enrichment claim is dismissed, Count XIII must also be dismissed.

## STANDARD OF DECISION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984) (quoting FED. R. CIV. P. 56(c)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). Moreover, the court "must view the evidence, all facts, and any

inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

### I. Defendants Are Entitled To Summary Judgment As To Lewinski's Claim Of Unjust Enrichment.

"In order to sustain the claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003). However, "[t]he mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *In re Estate of McCallum*, 153 Mich. App. 328, 335 (1986) (quoting RESTATEMENT (FIRST) OF RESTITUTION § 1 (1937) comt. c). "Generally, the test to determine whether the retention of a benefit is unjust as between two parties depends on a reasonable person standard: whether 'reasonable men in like situation as those who received and are benefited ... naturally would and ought to understand and expect compensation was to be paid.'" *Affinity Res., Inc. v. Chrysler Grp., LLC* 2013 WL 5576111 (Mich. Ct. App. Oct. 10, 2013) (quoting *In re Camfield Estate*, 351 Mich. 422, 432 (1958)).

In order to ameliorate unjust enrichment, courts will delve into the fiction of quasi contracts. *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 443 Mich. 176, 185 (1993). However, because this "doctrine vitiates normal contract principles," courts apply it with caution. *Id*. at 186. Accordingly, "a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp.*, 256 Mich. App. at 478 (citing *Martin v. East Lansing School Dist.*, 193 Mich. App. 166, 177 (1992)). "When there is an express contract covering the same subject matter, summary disposition of the unjust enrichment claim is

properly granted." *Underwood v. Albery*, 292151, 2010 WL 4977977 (Mich. Ct. App. Dec. 7, 2010).

In Count X, Plaintiff Lewinski alleges that Defendants have been unjustly enriched. (Sec. Am. Compl. at ¶ 104). Lewinski asserts that he was forced to complete work outside the scope of his employment because "nobody else was going to do it." (Lewinski Dep. at 87). Defendants contend this Count fails for two reasons: 1) Lewinski's compensation was governed by a written agreement, and 2) Defendants were not unjustly enriched under the facts presented.

### A. A Contract Existed Between The Parties Covering The Same Subject Matter At Issue.

As an express contract existed between the parties governing the subject matter in dispute, one cannot be implied under a theory of unjust enrichment. *Belle Isle Grill Corp.*, 256 Mich. App. at 478 (citing *Martin v. East Lansing School Dist.*, 193 Mich. App. at 177). In Plaintiffs' response, Lewinski admits that he had entered into an at-will employment agreement and that he had agreed to be compensated pursuant to a flat-rate compensation system. (Pls.' Resp. Br. at 3). Lewinski merely contends that he was performing the work of others in order for him to be able to perform his duties as a mechanic. (*Id.*). Lewinski does not cite any cases in support of the argument that the equitable theory of unjust enrichment is applicable when a valid contract exists governing the subject matter in the controversy. Therefore, under Michigan law, unjust enrichment is not applicable when there is an express contract in existence. Accordingly, Defendants are entitled to Summary Judgment as to Count X.

### B. The Defendants Were Not Unjustly Enriched By The Actions Taken By Lewinski.

Defendants contend that, under the undisputed facts here, Lewinski cannot show that Defendants were "unjustly" enriched. The first element for a claim of unjust enrichment is "the receipt of a benefit by defendant from plaintiff. . . ." *Belle Isle Grill Corp.*, 256 Mich. App. at 478. The second element of a claim for unjust enrichment requires a resulting inequity to the plaintiff if the defendant were allowed to retain the benefit conferred. *Id*.

#### 1. Defendants Were Not Unjustly Enriched Because Lewinski Was Compensated For All Hours Worked.

As an employee of Defendants, it is undisputed that Defendants benefitted from the actions taken by Lewinski. However, it has been agreed upon by both parties that Lewinski was compensated for all hours worked pursuant to the flat-rate compensation plan. (Def.'s Stmt. at ¶ 68; Pls.' Stmt. at ¶ 68). Accordingly, Defendants were not unjustly enriched.

#### 2. Defendants Were Not Unjustly Enriched Because Lewinski Knew He Would Not Be Paid Extra For Any Additional Services Rendered.

Lewinski alleges that Defendants were unjustly enriched because Lewinski had to perform work outside the scope of his employment as a mechanic. (Pls.' Resp. Br. at 3). Specifically, Lewinski contends he was performing the tasks of a service advisor. Lewinski concedes that he was informed by the district manager, Glen Robison ("Robison"), that he should not be performing those tasks. (Lewinski Dep. at 87; Pls.' Resp. Br. at 3). However, Lewinski maintains that this work was necessary in order for him to be able to perform his duties as a mechanic and that Robison let him continue performing the work. (Pls.' Resp. Br. at 3).

Defendants direct this Court's attention to *Affinity Res., Inc. v. Chrysler Grp., LLC* 2013 WL 5576111. There it is found that "where a party supplies a benefit to another *gratis* or out of his or her own self-interest, the beneficiary's retention of the benefit cannot be said to be unjust

as between the two parties." *Id.* (citing *In re Camfield Estate*, 351 Mich. at 428–434). Accordingly, "[a] person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons." RESTATEMENT (FIRST) OF RESTITUTION § 112 (1937).

The service advisors worked in conjunction with the mechanics. (Lewinski Dep. at 82). If the service advisors' estimate was accepted by the customer, Lewinski would get to perform the vehicle repair, thus receiving his higher hourly rate of $26.50. Accordingly, although Defendants may have benefitted from Lewinski's purported work as a service advisor, Lewinski most certainly did as well.

Lewinski admits that the store's district manager Robison had told him he should not be performing the duties of service advisors and that he would not be paid extra for such work. (Lewinski Dep. at 87). Thus, because Lewinski voluntarily conferred benefits to Defendants out of his own self-interest, there can be no unjust enrichment. Therefore, the Court concludes that Defendants are entitled to summary judgment as to Count X.

## II. Count XIII Alleging Loss Of Society, Companionship And Consortium Is Also Dismissed.

This Court has concluded that Defendants are entitled to summary judgment relating to Count X. Accordingly, summary judgment will also be granted for Count XIII as it is derivative of Count X.

## CONCLUSION & ORDER

As set forth above, Plaintiffs have conceded that all claims except Counts X and XIII should be dismissed and the Court concludes that Defendants are entitled to summary judgment as to Counts X and XIII, the last two remaining claims. A judgment shall be issued.

                                      S/Sean F. Cox
                                      Sean F. Cox
                                      United States District Judge

Dated: July 29, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 29, 2014, by electronic and/or ordinary mail.

                                      S/Jennifer McCoy
                                      Case Manager